UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JOSE ANTHONY TORREZ,<br>    Plaintiff, | : | |
| v. | : | No. 3:17-cv-677 (SRU) |
| WILLIAM MULLIGAN, et al.,<br>    Defendants. | : | |

**INITIAL REVIEW ORDER**

Jose Anthony Torrez, currently confined at Northern Correctional Institution in Somers, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983. Torrez alleges that the defendants used excessive force and retaliated against him, and subjected him to unconstitutional conditions of confinement. He also asserts claims under the Americans with Disabilities Act. Torrez names as defendants Warden William Mulligan; Correctional Officers Laprey, Collier, Hafner, Wochomurka, and Sanchez; Lieutenant James Delpesio; Captain Pafumi; Nurse Paul Balatka; Head Nurse Barbra Savoie; and the Department of Correction. Torrez seeks damages as well as declaratory and injunctive relief. The complaint was filed on April 24, 2017. Torrez's motion to proceed *in forma pauperis* was granted on May 3, 2017.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not

required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.   Allegations

Torrez was transferred to Northern Correctional Institution as a pretrial detainee. He was sentenced on May 27, 2016. Thus, at the time of the incident underlying the complaint, Torrez was a sentenced inmate. *See* www.ctinmateinfo.state.ct.us (last visited May 4, 2017). Torrez is classified as seriously mentally ill, suffering from post-traumatic stress disorder as a result of childhood trauma. He has been diagnosed with several other mental disorders and takes medication.

On the afternoon of July 3, 2016, Torrez was waiting for correctional officers to escort him to make a social phone call. When Laprey was touring the unit, Torrez reminded him about the scheduled social call. Laprey asked whether Torres was going to call his boyfriend. Every time Laprey toured the unit, he made sexually inappropriate remarks to Torrez. Although Torrez asked him to stop, Laprey continued making inappropriate comments.

2

Later that day, Laprey and another officer came to apply restraints and escort Torrez to make his call. When Torrez again asked Laprey to refrain from making derogatory comments, Laprey stated that he would do what he wanted and promised that Torrez would get f—ked up for trying to tell him what to do.

At the conclusion of the call, Laprey came to the dayroom to escort Torrez back to his cell. When Laprey made another comment, Torrez asked him to stop commenting. Laprey told Torrez that he would be "slammed." As Laprey walked toward Torrez in an aggressive manner, Torrez fled. He stopped when Laprey stated that he was joking and Laprey escorted him back to his cell.

They stopped outside the cell door. Laprey reminded Torrez of his promise to slam him and proceeded to repeatedly shove Torrez against the wall and slam him to the floor. These actions damaged Torrez's knee. Although Torrez was not resisting, Laprey then called a "code 11" which requests emergency assistance for prisoner noncompliance.

When additional staff responded, Torrez was lifted to his feet to be escorted to the medical unit. Delpesio sprayed Torrez with an excessive amount of chemical agent. After he was decontaminated in the medical unit, Torrez was escorted to a cell and strip searched. The strip search caused Torrez to re-experience sexual abuse he had endured as a child. After the search, Torrez was dressed and defendant Collier applied in-cell restraints while defendants Hafner and Sanchez forcibly held Torrez in place. The tether chain on the in-cell restraints was too short, preventing Torrez from standing erect. Nurse Balatka approved the restraints.

Torrez remained in the restraints for eighteen hours, from 9:00 p.m. on July 3, 2016, until 3:36 p.m. on July 4, 2016. No medical staff member corrected these conditions during that time.

3

Nurse Savoie checked the restraints at 7:55 a.m. on July 4, 2016. She did not order the restraints adjusted or removed. Instead, she reported that the restraints were within the normal range.

II.     Analysis

Torrez includes five counts in his complaint: (1) all defendants were deliberately indifferent to his safety and medical needs in violation of the Eighth Amendment and the Americans with Disabilities Act; (2) Laprey, Sanchez and Delpesio used excessive force against Torrez; (3) Laprey and Delpesio violated Torrez's First Amendment right of free speech and his Fourteenth Amendment right to equal protection of the laws, and Mulligan, Pafumi, Hafner, Wochomurka, Savoie and Balatka retaliated against Torrez; (4) all defendants subjected Torrez to unconstitutional conditions of confinement; and (5) Department of Correction, Mulligan, Delpesio, Pafumi, Savoie and Balatka failed to protect him and supervise their subordinates.

   A.     Excessive Force

The use of excessive force against a prisoner can constitute cruel and unusual punishment even where the inmate does not suffer serious injuries. *See Hudson v. McMillian,* 502 U.S. 1, 4 (1992), *accord Wilkins v. Gaddy*, 559 U.S. 34, 34, 36 (2010) (per curiam). As with all Eighth Amendment claims, excessive force claims have subjective and objective components. The subjective component focuses on "the defendant's motive for his conduct"; the objective component focuses "on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). In excessive force cases, the "core judicial inquiry" is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7 (internal quotation marks omitted)).

Torrez contends that Laprey, Sanchez and Delpesio used excessive force against him. He

4

alleges that Laprey shoved him into the wall and slammed him to the floor, Delpesio used an excessive amount of chemical agent, and Sanchez forcibly held him when restraints were applied. Although the allegations are sufficient to state a plausible excessive force claim against Laprey and Delpesio, they are not sufficient with respect to Sanchez. The only allegation regarding Sanchez is that he physically held Torrez to allow in-cell restraints to be placed on Torrez. Compl. at ¶ 33. Torrez does not allege that the manner in which Sanchez physically held him was excessive. Accordingly, the excessive force claim against Sanchez is dismissed.

B.     Failure to Protect

Torrez contends that Mulligan, Delpesio, Pafumi, Savoie and Balatka failed to protect him from harm. Prison officials have a duty to intervene and prevent cruel and unusual punishment from occurring. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). To state a failure to protect claim, Torrez must allege facts showing that the defendants actually knew of and disregarded an excessive risk of harm to his health or safety. *See Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996).

Delpesio, Savoie and Balatka were present and aware the events. Those facts are sufficient to demonstrate the knowledge required to state a failure to protect claim. Mulligan was not present and Torrez alleges no facts suggesting that he was present or aware of the incident when it was occurring. Thus, he has alleged no facts to support a failure to protect claim against Mulligan.

Although Captain Pafumi was not present and was not initially aware of the incident, Torrez alleges that he reviewed the incident report. Construing that allegation liberally, Captain Pafumi could have been aware that Torrez was being held in in-cell restraints and could have

5

intervened to ensure that proper procedures were being followed. Accordingly, I will permit the failure to protect claim to proceed against Captain Pafumi.

      C.     Retaliation

Prison officials may not retaliate against inmates for exercising their constitutional rights. To state a claim for retaliation, Torrez must allege facts demonstrating: (1) that he was engaged in constitutionally protected activity, (2) the defendants took adverse action against him, and (3) that there is a causal connection between the protected activity and the adverse action. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). To succeed on a claim that the defendant violated an inmate's First Amendment rights, the inmate's speech and/or conduct must constitute constitutionally protected speech. *Id.* Following the Second Circuit's admonition that retaliation complaints be viewed "with skepticism and particular care," I must carefully consider whether Torrez's speech is constitutionally protected. *See Davis*, 320 F.3d at 352.

A plaintiff may not pursue a retaliation claim against a corrections officer every time he gets into a verbal dispute with that officer. *See Carl v. Griffin*, 2011 WL 723553, at *5 (S.D.N.Y. Mar. 2, 2011) (collecting cases). The fact that the plaintiff claims retaliation on account of words that he spoke does not establish that he has engaged in constitutionally protected speech. *See Coleman v. Beale*, 636 F. Supp. 2d 207, 211 (W.D.N.Y. 2009) (holding that, while filing a grievance is protected, giving advice to another inmate about the mechanics of filing a grievance was not protected). To hold otherwise "would elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment. *Carl*, 2011 WL 723553, at *5 (internal citations and quotation marks omitted).

6

Torrez alleges that Laprey violated Torrez's First Amendment rights by assaulting him on account of their verbal interaction immediately prior to the assault. Torrez alleges that he was subject to Laprey's inappropriate comments and that Laprey assaulted him when Torrez told Laprey to stop making those comments. Because Torrez does not have a First Amendment right to engage Laprey in a verbal dispute, Torrez's retaliation claim fails. Had Torrez complained about the incident via a grievance and had Torrez plausibly alleged that the retaliation was motivated by that grievance, the complaint would have received First Amendment protection.

With regard to the remaining defendants, Torrez alleges no facts suggesting that any other defendant was aware of the exchanges between Torrez and Laprey. Rather, he alleges that the other defendants came to the area in response to the code. Thus, regardless of any claim against Laprey, the allegations do no support a retaliation claim against any other defendant.

D. <u>Conditions of Confinement</u>

Torrez claims that he was subjected to unconstitutional conditions of confinement. To state an Eighth Amendment claim for unconstitutional conditions of confinement, an inmate must allege facts demonstrating failure of prison officials to provide for the inmate's "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

An inmate may prevail on an Eighth Amendment claim based on unconstitutional conditions of confinement "only where he proves both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the official acted, or omitted to act with a 'sufficiently culpable state of mind,' *i.e.*, with 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002)

(quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A condition is objectively serious if it "'pose[s] an unreasonable risk of serious damage to [a prisoner's] future health.'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Thus, the "objective component relates to the seriousness of the injury." *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994). To meet the subjective component, a plaintiff must allege that prison officials "[knew] of and disregard[ed] an excessive risk to [the plaintiff's] health or safety," that is, that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . dr[e]w [that] inference." *Phelps*, 308 F.3d at 185–86. An inmate may state an Eighth Amendment claim based on allegations that prison officials, with deliberate indifference, exposed him to an unsafe condition that poses an unreasonable risk of serious harm to his future health. *Helling*, 509 U.S. at 34–35.

I assume that, in this claim, Torrez refers to his confinement in in-cell restraints. Torrez alleges that he was placed in in-cell restrains that were too short, which prevented him from standing erect. Nurse Balatka approved the restrains and Torrez alleges that he remained in that condition for eighteen hours. During that period, the only defendant who allegedly checked up on Torrez's status was Nurse Savoie, who reported that the restrains were in the normal range. Because Nurse Balatka and Nurse Savoie were the only ones who were allegedly responsible for being aware of and approving his confinement in that condition for eighteen hours, Torrez's Eighth Amendment claim will only proceed against Nurse Balatka and Nurse Savoie. Torrez's Eighth Amendment claims against all other defendants are dismissed.

E. <u>Americans with Disabilities Act</u>

Torrez also references the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101,

*et seq.* The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. The statute is intended "to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2)(A). When analyzing claims, "courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities." *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013) (citation and quotation marks omitted).

Torrez alleges that he suffers from post-traumatic stress disorder and other unspecified mental disorders. He alleges no facts showing that these disorders imposed any limitations on major life activities. Thus, Torrez has not shown that he has a qualifying disability. Even if he had established a qualifying disability, Torrez has not identified any program or activity from which he was excluded because of his disability. Thus, he fails to state an ADA claim.

F. Equal Protection

Torrez also alleges that his right to equal protection was violated. The Equal Protection Clause of the Fourteenth Amendment protects prisoners from invidious discrimination. This provision does not mandate identical treatment for each individual; rather it requires that similarly situated persons be treated the same. *City of Cleburne v. Cleburne Living Ctr.*, 473

U.S. 432, 439–40 (1985).  To state an equal protection claim, Torrez must allege facts showing that he was treated differently from similarly situated individuals and that the reason for the different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)).

Torrez also could assert an equal protection claim based on a "class of one" theory.  To state a valid claim, the plaintiff must allege first that he was intentionally treated differently from others who are similarly situated.  Second, he must allege facts showing that there is no rational basis for the difference in treatment.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  He must allege an "extremely high" level of similarity with the person to whom he is comparing himself; their circumstances must be "prima facie identical."  *Neilson v. D'Angelis*, 409 F.2d 100 (2d Cir. 2005), *overruled in part on other grounds as recognized by Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008).

Although Torrez contends that the defendants denied him equal protection, he does not identify any similarly situated inmates who were treated differently.  Thus, he fails to state a plausible equal protection claim.

G. Department of Correction

Torrez has included the Department of Correction as a defendant.  Section 1983 requires that each defendant be a person acting under color of state law.  42 U.S.C. § 1983 ("Every person who, under color of any statute, ordnance, regulation, custom or usage, of any State … subjects or causes to be subjected . . . .").  A state agency is not a person within the meaning of section

10

1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (state agencies cannot be sued under section 1983).  Because the only remaining claims are section 1983 claims, the Department of Correction is not a proper defendant.  All claims against the Department of Correction are dismissed.

   H.  <u>Defendants Mulligan and Wochomurka</u>

Torrez must allege facts showing the personal involvement of each defendant in the alleged constitutional violation before damages can be awarded.  *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).

Torrez lists Wochomurka in his description of the defendants but does not mention him in the recitation of facts.  He does not list Wochomurka in his count for use of excessive force and does not allege that he participated in the escort to restrictive housing or placement in in-cell restraints.  Absent any facts demonstrating his involvement in the incidents underlying this action, Torrez fails to state a cognizable claim against defendant Wochomurka.

Torrez does not allege that Warden Mulligan was aware of the underlying incidents when they were occurring or that he brought the incidents to Warden Mulligan's attention at a later time.  Torrez contends that Warden Mulligan failed to properly train, supervise and reprimand the other defendants. Warden Mulligan is a supervisory official.  To state a claim for supervisory liability, Torrez must demonstrate one or more of the following criteria:  (1) the defendants actually and directly participated in the alleged action, (2) the defendants failed to remedy a wrong after being informed of the wrong though a report or appeal, (3) the defendants created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or permitted such a policy or custom to continue, (4) the

11

defendants were grossly negligent in their supervision of the officers who committed the constitutional violation, or (5) the defendants were deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Torrez also must demonstrate a causal link between the actions of the supervisory official and his injuries. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

Torrez alleges no facts suggesting that the defendants acted pursuant to any policy created or sanctioned by Warden Mulligan or that he was aware of the incident at any time. The allegations suggest that the entire incident was caused by Laprey. I conclude that the allegations do not set forth a plausible claim for supervisory liability against Warden Mulligan.

IV.     Conclusion

The ADA claim; the equal protection claim; the First Amendment claim; the excessive force claim against Sanchez; the conditions of confinement claim against Laprey, Collier, Delpesio, Pafumi, Hafner, and Sanchez; and all claims against the Department of Correction, Warden Mulligan, and Correctional Officer Wochomurka are **DISMISSED** pursuant to 28 U.S.C. § 1915(A)(b)(1). The remaining claims will proceed against the following defendants only: the excessive force claim will proceed against Laprey and Delpesio; the failure to protect claim will proceed against Delpesio, Pafumi, Savoie and Balatka; and the conditions of confinement claim will proceed against defendants Balatka and Savoie.

The Court enters the following orders:

(1)     **The Clerk shall** verify the current work addresses for each defendant, Laprey, Delpesio, Pafumi, Balatka and Savoie, with the Department of Correction Office of Legal

Affairs, mail a waiver of service of process request packet containing the Complaint to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint on defendants Laprey, Delpesio, Pafumi, Balatka and Savoie, in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return within thirty (30) days from the date of this order.

(3) **The Clerk shall** send written notice to the plaintiff of the status of this action, along with a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

13

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing any document with the Court.

**SO ORDERED** this 16th day of June 2017 at Bridgeport, Connecticut.

    /s/STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge