# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE ANTHONY TORREZ, <br>     Plaintiff, | : <br> : <br> : |
| v. | :    No. 3:17-cv-677 (SRU) |
| | : |
| WILLIAM MULLIGAN, et al., <br>     Defendants. | : <br> : |

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

On April 24, 2017, Jose Anthony Torrez, an inmate currently confined at Garner Correctional Institution in Suffield, Connecticut, filed a civil rights complaint *pro se* under 42 U.S.C. § 1983 against various employees of the Connecticut Department of Correction ("DOC") for violating his constitutional rights while he was confined at Northern Correctional Institution in Somers, Connecticut. Compl., Doc. No. 1. On June 16, 2017, I issued my Initial Review Order permitting Torrez's Eighth Amendment claims to proceed against five defendants: Correction Officer Laprey, Lieutenant James Delpesio, Captain Pafumi, Nurse Barbara Savoie, and Nurse Paul Balatka. Initial Review Order, Doc. No. 14 at 4-12. The defendants answered the complaint on August 15, 2017. Answer, Doc. No. 31.

On January 17, 2018, the defendants filed a Motion for Summary Judgment (Doc. No. 65) on the ground that Torrez failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before seeking relief in federal court. They argue that Torrez failed to fully comply with the DOC's Administrative Directives on the inmate grievance procedure. Defs.' Mem. of Law in Supp. of Mot. Summ. J. ("Defs.' Mem."), Doc. No. 65-1 at 3-7. Torrez thereafter filed

his own cross-motion for summary judgment, arguing that he has, in fact, exhausted his administrative remedies, and the pleadings and supporting evidence show no genuine issue of material fact with respect to his Eighth Amendment claims. Pl.'s Mot. Summ. J., Doc. No. 68. The defendants filed a written opposition to Torrez's motion, disputing his assertion that he exhausted his administrative remedies. Defs.' Resp. to Pl.'s Mot. Summ. J. ("Defs.' Resp."), Doc. No. 69. The defendants did not address Torrez's arguments with respect to the merits of his constitutional claims.

For the following reasons, the defendant's Motion to Summary Judgment (Doc. No. 65) is **DENIED** and Torrez's Motion for Summary Judgment (Doc. No. 68) is **DENIED without prejudice** to refiling at a later date.

I. **Standard of Review**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law" and is "genuine" if, based on that fact, "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (mere existence of alleged factual dispute will not defeat summary judgment motion). The moving party may satisfy that burden "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curium) (internal quotations omitted; citations omitted).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *see also Atkinson v. Rinaldi*, 2016 WL 7234087, at *1 (D. Conn. Dec. 14, 2016) (nonmoving party must present evidence that would allow reasonable jury to find in his favor in order to defeat motion for summary judgment); *Pelletier v. Armstrong*, 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007) ("nonmoving party must present significant probative evidence to create genuine issue of material fact") (quoting *Soto v. Meachum*, 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991)).

When deciding a motion for summary judgment, I may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier*, 2007 WL 685181, at *7. In reviewing the record, I must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party regarding the issue on which summary judgment is sought, then

3

summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Because Torrez filed his motion while proceeding *pro se*,[1] I must read his pleadings and factual allegations liberally and interpret them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite that liberal interpretation, however, "[u]nsupported allegations do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003).

## II. Factual Allegations

As stated in my Initial Review Order, Torrez alleged the following facts in support of his Eighth Amendment claims:

> Torrez was transferred to Northern Correctional Institution as a pretrial detainee. He was sentenced on May 27, 2016. Thus, at the time of the incident underlying the complaint, Torrez was a sentenced inmate. *See* www.ctinmateinfo.state.ct.us (last visited May 4, 2017). Torrez is classified as seriously mentally ill, suffering from post-traumatic stress disorder as a result of childhood trauma. He has been diagnosed with several other mental disorders and takes medication.
>
> On the afternoon of July 3, 2016, Torrez was waiting for correction[] officers to escort him to make a social phone call. When Laprey was touring the unit, Torrez reminded him about the scheduled social call. Laprey asked whether Torres was going to call his boyfriend. Every time Laprey toured the unit, he made sexually inappropriate remarks to Torrez. Although Torrez asked him to stop, Laprey continued making inappropriate comments.
>
> Laprey and another officer came to apply restraints and escort Torrez to make his call. When Torrez again asked Laprey to refrain from making derogatory comments, Laprey stated that he would do what he wanted and promised that Torrez would get f—ked up for trying to tell him what to do.

---

[1] Torrez has since been appointed counsel.

4

> At the conclusion of the call, Laprey came to the dayroom to escort Torrez back to his cell. When Laprey made another comment, Torrez asked him to stop commenting. Laprey told Torrez that he would be "slammed." As Laprey walked toward Torrez in an aggressive manner, Torrez fled. He stopped when Laprey stated that he was joking and Laprey escorted him back to his cell.
>
> They stopped outside the cell door. Laprey reminded Torrez of his promise to slam him and proceeded to repeatedly shove Torrez against the wall and slam him to the floor. These actions damaged Torrez's knee. Although Torrez was not resisting, Laprey then called a "code 11" which requests emergency assistance for prisoner noncompliance.
>
> When additional staff responded, Torrez was lifted to his feet to be escorted to the medical unit. Delpesio sprayed Torrez with an excessive amount of chemical agent. After he was decontaminated in the medical unit, Torrez was escorted to a cell and strip searched. The strip search caused Torrez to re-experience sexual abuse he had endured as a child. After the search, Torrez was dressed and [placed in] in-cell-restraints . . . The tether chain on the in-cell restraints was too short, preventing Torrez from standing erect. Nurse Balatka approved the restraints.
>
> Torrez remained in the restraints for eighteen hours, from 9:00 p.m. on July 3, 2016, until 3:36 p.m. on July 4, 2016. No medical staff member corrected these conditions during that time. Nurse Savoie checked the restraints at 7:55 a.m. on July 4, 2016. She did not order the restraints adjusted or removed. Instead, she reported that the restraints were within the normal range.

Initial Review Order, Doc. No. 14 at 2-4.

After reviewing his allegations, I concluded that Torrez stated plausible Eighth Amendment claims for excessive force against Laprey for shoving him against the wall and "slamming" him onto the floor and against Delpesio for deploying an excessive amount of chemical agent on him. *Id.* at 4-5. I also concluded that Torrez stated a plausible claim that Delpesio, Savoie, Balatka, and Pafumi failed to protect him from harm under the Eighth Amendment because Delpesio, Savoie, and Balatka were present during the altercation and Pafumi became aware that Torrez was improperly placed in in-cell restraints for eighteen hours. *Id.* at 5. Finally, I concluded that Torrez stated a claim

5

that Balatka and Savoie subjected him to unlawful conditions of confinement under the Eighth Amendment because they were aware of, and were responsible for, his placement in in-cell restraints. *Id.* at 8.

**III.     Analysis**

   A. <u>Defendants' Motion for Summary Judgment (Doc. No. 65)</u>

The defendants claim that they are entitled to summary judgment because Torrez failed to properly exhaust his administrative remedies under the PLRA. Specifically, they argue that Torrez did not fully comply with the inmate grievance procedure because his initial Inmate Request Form, which concerned the incident giving rise to his Eighth Amendment claims, did not include a requested remedy, and he failed to submit an amended Inmate Request Form as instructed. Defs.' Mem. at 6-7. Torrez disputes that assertion and argues that he properly exhausted his administrative remedies by filing his Inmate Request Form and Level 1, 2, and 3 grievance appeals. Pl.'s Mot. for Summ. J. at 50-51. In their reply, the defendants counter that Torrez's Inmate Request Form was never properly filed and that DOC officials never received his appeals. Defs.' Resp. at 1-2. Alternatively, they argue that the Level 2 and 3 appeals were filed late, and therefore, did not comply with administrative procedures. *Id.* at 2.

Because there appear to be genuine issues of material fact with respect to whether Torrez properly exhausted his administrative remedies, the defendants' Motion for Summary Judgment is **DENIED**.

The exhaustion provision under the PLRA provides in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983, . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

6

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In enacting section 1997e, Congress sought to afford prison officials time and opportunity to address complaints internally and reduce the quantity, and improve the quality, of prisoner suits. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). Exhaustion of administrative remedies is mandatory for any prisoner challenging the conditions of his confinement, including claims of excessive force against prison officials. *Id.* at 523.

In *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), the United States Supreme Court held that exhaustion under the PLRA requires "proper exhaustion," meaning full compliance with administrative procedures and deadlines. *See also Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006). "An 'untimely or otherwise procedurally defective administrative grievance' . . . does not constitute proper exhaustion." *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011) (quoting *Woodford*, 548 U.S. at 83-84). To properly exhaust a claim, a prisoner must comply with the prison grievance procedures, including utilizing each step of the administrative appeal process. *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)); *Jones v. Johnson*, 2017 WL 1843692, at *4 (D. Conn. May 8, 2017).

"An inmate may be excused from the exhaustion requirement only if administrative remedies were not in fact available." *Shehan v. Erfe*, 2017 WL 53691, at *6 (D. Conn. Jan. 4, 2017) (citing *Ross v. Blake*, __ U.S. __, 135 S. Ct. 1850, 1858 (2016)). The Supreme Court has identified three circumstances in which an administrative remedy cannot be used by an inmate to obtain relief: (1) "the administrative remedy may operate as a 'dead end,' such as where the office to which inmates are directed to submit all grievances disclaims the ability to consider them . . .

7

[(2)] the procedures may be so confusing that no ordinary prisoner could be expected to 'discern or navigate' the requirements . . . [a]nd [(3)] prison officials may 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* (quoting *Ross*, 135 S. Ct. at 1859-60).

The administrative remedy process established by the DOC is set forth in DOC Administrative Directive 9.6. *Shehan*, 2017 WL 53691, at *6. If the inmate cannot resolve the issue verbally with the prison official, he must first file an Inmate Request Form (Form No. CN 9601). *Id.*; *Jones*, 2017 WL 1843692, at *4; DOC Administrative Directives, Defs.' Ex. A (Doc. No. 65-2) at 6. "The inmate must clearly state the problem and the action requested to remedy the issue." DOC Administrative Directives, Defs.' Ex. A at 6. If the inmate is not satisfied with the official's response, or if the official fails to respond with fifteen days, he must file a grievance or "Level 1 Review" (Form No. CN 9602) and attach his Inmate Request Form showing that he had attempted to resolve the issue with the official informally. *Shehan*, 2017 WL 53691, at *6; *Jones*, 2017 WL 1843692, at *4. The Level 1 Review must be submitted within thirty days "of the occurrence or discovery of the cause of the grievance," and satisfy the same criteria as Inmate Request Forms. *See* DOC Administrative Directives, Defs.' Ex. A at 7. If the inmate is not satisfied with the response to his Level 1 Review, he may file a "Level 2 Review" within five days after receipt of the response. *Id.* at 8. Alternatively, if the Unit Administrator does not respond to the Level 1 Review within thirty days after receipt, the inmate may submit a Level 2 Review upon expiration of the thirty-day deadline. *Id.* The Level 2 Review constitutes the final level of appeal for all inmate grievances except for those that (a) challenge department policy, (b) challenge the integrity of the grievance

procedure, or (c) exceed the thirty-day limit for a Level 2 Review response. *Id.*; *Jones*, 2017 WL 1843692, at *4.

The record shows that Torrez initially filed an Inmate Request Form concerning Laprey's actions on July 14, 2016. Inmate Request Form, Defs.' Ex. B (Doc. No. 65-3) at 13. A corrections official responded to the request, instructing Torrez to contact the Department of Public Safety if he wished to file charges against Laprey. *Id.* On July 15, 2016, Torrez filed an inmate grievance (Level 1 Review). Grievance, Defs.' Ex. B at 12. That grievance was rejected and returned to Torrez because, according to prison officials, it did not include a requested remedy, per administrative policy. Grievance Returned Without Disposition, Defs.' Ex. B at 10; Pl.'s Ex. 3 at 30. The written response notified Torrez that he could resubmit his grievance after he corrects the deficiency. *Id.*

According to the defendants, Torrez never resubmitted his grievance, and they submitted affidavits from two DOC officials asserting that they never received any follow-up grievances or appeals from Torrez. Defs.' Mem. at 7; Aff. of Christopher Johnson, Defs.' Ex. B at ¶ 6; Second Aff. of Christopher Johnson, Defs.' Resp. Ex. 1 (ECF No. 69-1) at ¶ 5; Aff. of Selena Rious, Defs.' Resp. Ex. 2 (ECF No. 69-2) at ¶ 7. Torrez, however, attached to his summary judgment motion what he claims is his corrected and resubmitted grievance, which states a requested remedy, and is dated September 19, 2016. Resubmitted Grievance, Pl.'s Mot. for Summ. J. Ex. 3 at 32. He also attached copies of Level 2 and 3 appeals, which are dated November 1, 2016 and December 15, 2016, respectively. Level 2/3 Inmate Grievance Appeals, Pl.'s Mot. for Summ. J. Ex. 3 at 33-34. The defendants claim, however, that DOC officials never

received any appeals from Torrez. Defs.' Resp. at 1-2; Second Aff. of Christopher Johnson, Defs.' Resp. Ex. 1 at ¶ 5; Aff. of Selena Rious, Defs.' Resp. Ex. 2 at ¶ 7.

Based on the foregoing, I conclude that there are genuine issues of material fact with respect to whether Torrez properly exhausted all of his administrative remedies. Torrez has provided evidence that he resubmitted his inmate grievance, which corrected the deficiency of his initial grievance, and that he followed his grievance with Level 2 and 3 appeals. Although the defendants have provided testimony from DOC officials that DOC staff never received Torrez's corrected grievance or his appeals, a decision in their favor would necessarily be based on a credibility determination, which I cannot make when ruling on a summary judgment motion. *See Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] summary judgment standard, the court should not weigh evidence or assess the credibility of witnesses"). Similarly, their argument that the corrected grievance and subsequent appeals did not comply with the deadlines set forth by Administrative Directive 9.6 does not entitle them to summary judgment. The fact that the paperwork was, in their view, filed late does not necessarily require a finding that DOC officials would have rejected Torrez's claims as untimely. Without any response from DOC officials on the corrective grievance and/or appeals forms themselves, I conclude that there are genuine issues of material fact with respect to whether Torrez timely filed his corrective grievance and subsequent appeals.

Construing the evidence in the light most favorable to Torrez, the non-moving party, I conclude that a reasonable juror could find that he properly exhausted his administrative remedies based on the evidence he presented. Therefore, the defendants' Motion for Summary Judgment (Doc. No. 65) is **DENIED**.

B. Torrez' Motion for Summary Judgment (Doc. No. 68)

Torrez argues in his Motion for Summary Judgment that there are no genuine issues of material fact with respect to his Eighth Amendment claims. Pl.'s Mot. for Summ. J., Doc. No. 68 at 46-50. Although the defendants have filed a response to Torrez's motion, they limited their response to the issue of exhaustion and did not address the merits of Torrez's Eighth Amendment claims.

As previously mentioned, there appear to be genuine issues of material fact with respect to whether Torrez exhausted all of his administrative remedies. Because Torrez cannot prevail on his Eighth Amendment claim if he failed to meet the exhaustion requirement, it is best to address the validity of his Eighth Amendment claims at a later date, after a determination has been made regarding the exhaustion requirement. Accordingly, Torrez's Motion for Summary Judgment (Doc. No. 68) is **DENIED without prejudice** to refiling at a later date.

## ORDERS

The defendant's Motion for Summary Judgment (Doc. No. 65) is **DENIED**. Torrez's Motion for Summary Judgment (Doc. No. 68) is **DENIED without prejudice.**

It is so ordered.

Dated at Bridgeport, Connecticut this 24th day of August 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge